# U.S. District Court
## District of New Hampshire (Concord)
## CIVIL DOCKET FOR CASE #: <u>1:16–cv–00069–JD</u>

Brady v. Somersworth School District, School Board et al
Assigned to: Judge Joseph A. DiClerico, Jr
Cause: 42:1983 Civil Rights Act

Date Filed: 02/22/2016
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**Lisa Marie Brady**                                   represented by   **Lisa Marie Brady**
                                                                        8 Constable Road
                                                                        Durham, NH 03824
                                                                        603 292–5052
                                                                        Email: lisa.brady@comcast.net
                                                                        PRO SE

V.

**<u>Defendant</u>**

**Somersworth School District, School**               represented by   **Brian J.S. Cullen**
**Board**                                                               CullenCollimore PLLC
*SAU #56*                                                               10 East Pearl St
*other*                                                                 Nashua, NH 03060
SAU #56                                                                 603 881–5500
                                                                        Fax: 603 881–5507
                                                                        Email: bcullen@cullencollimore.com
                                                                        *ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**Jeni Mosca**                                        represented by   **Brian J.S. Cullen**
*Superintendent SAU #56, in both her*                                   (See above for address)
*individual and official capacities*                                    *ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**Pamela MacDonald**                                  represented by   **Brian J.S. Cullen**
*Special Education Director SAU #56, in*                                 (See above for address)
*both her individual and official capacities*                           *ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**Jeanne Kincaid**                                    represented by   **Melissa A. Hewey**
*Attorney for SAU #56, in both her*                                     Drummond Woodsum & MacMahon
*individual and official capacities*                                    84 Marginal Way, Ste 600
*TERMINATED: 06/13/2016*                                                Portland, ME 04104
                                                                        207 772–1941
                                                                        Fax: 207–772–3627
                                                                        Email: mhewey@dwmlaw.com

*TERMINATED: 06/13/2016*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Demetrio F. Aspiras , III**
Drummond Woodsum
100 International Dr, Ste 340
Portsmouth, NH 03801
603 433–3317
Email: daspiras@dwmlaw.com
*TERMINATED: 06/13/2016*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/22/2016 | 1 | | COMPLAINT against Jeanne Kincaid, Pamela MacDonald, Jeni Mosca, Somersworth School District, School Board with Jury Demand (Filing fee $ 400 receipt number 14649013120) filed by Lisa Marie Brady. (Attachments: # 1 Appendix, # 2 Exhibit 1 – Resume and Evals., # 3 Exhibit 2 – Release, pics, # 4 Exhibit 3 – Job Performance, # 5 Exhibit 4 – Grievance against MacDonald, # 6 Exhibit 5 – Email(s), # 7 Exhibit 6 – Warning, Grievance, Rebuttal, # 8 Exhibit 7 – Hilliard response, # 9 Exhibit 8 – Breton sample evidence, # 10 Exhibit 9 – Breach of contract demotion evidence, # 11 Exhibit 10 – Attorney exchange–communication, # 12 Exhibit 11 – Emails re complaint filed, # 13 Exhibit 12 – Atty request for hrg and other correspondance, # 14 Exhibit 13 – Whistle Blower complaint filed, # 15 Exhibit 14 – Threat of term., # 16 Exhibit 15 – NHDOL docs, # 17 Exhibit 16 – W. Jack report and evidence to refute, # 18 Exhibit 17 – Mosca letter rec. term., # 19 Exhibit 18 – Emails and correspondance, # 20 Exhibit 19 – NEA, # 21 Exhibit 20 – Bd decision to term. and faculty contract, # 22 Exhibit 21 – School Bd. Hrg at City Hall, # 23 Exhibit 22 – Email to V. Barry, # 24 Exhibit 23 – Slate Magazine article, # 25 Exhibit 24 – CBA, # 26 Summons – Waiver)(de) (Entered: 03/04/2016) |
| 02/22/2016 | | | Case assigned to Judge Joseph A. DiClerico, Jr. The case designation is: 1:16–cv–69–JD. Please show this number with the judge designation on all future pleadings. (de) (Entered: 03/04/2016) |
| 03/07/2016 | | | NOTICE. This case has been designated for Electronic Case Filing. All further submissions shall be filed in compliance with the Administrative |

| | | | |
|---|---|---|---|
| | | | Procedures for Electronic Case Filing. Pro se litigants are not required to file electronically and may continue to file documents in paper format. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(de) (Entered: 03/07/2016) |
| 03/10/2016 | 2 | | Summonses issued electronically as to Jeanne Kincaid, Pamela MacDonald, Jeni Mosca, Somersworth School District, School Board. **NOTICE: Counsel shall print and serve the summonses and all attachments in accordance with Fed. R. Civ. P. 4.** (Attachments: # 1 Notice ECF)(de) (Entered: 03/10/2016) |
| 03/14/2016 | 3 | | **ORDER PROHIBITING REMOTE ELECTRONIC ACCESS: Because good cause exists to prohibit a nonparty from obtaining remote electronic access to the Complaint, Appendix and Exhibits 2 through 23, the clerk shall limit remote access accordingly pursuant to Fed. R. Civ. P. 5.2(e)(2). So Ordered by Magistrate Judge Andrea K. Johnstone.(de)** (Entered: 03/15/2016) |
| 03/24/2016 | 4 | | WAIVER OF SERVICE Returned Executed as to Jeanne Kincaid, Pamela MacDonald, Jeni Mosca, Somersworth School District, School Board. Served/Mailed on 3/22/2016. (dae) (Entered: 03/25/2016) |
| 03/24/2016 | 5 | | MOTION to Obtain ECF Login and Password filed by Lisa Marie Brady, pro se. Served on 3/24/16 via CM/ECF docketing.(dae) (Entered: 03/25/2016) |
| 03/28/2016 | 6 | | NOTICE of Attorney Appearance by Brian J.S. Cullen on behalf of Pamela MacDonald, Jeni Mosca, Somersworth School District, School Board Attorney Brian J.S. Cullen added to party Pamela MacDonald(pty:dft), Attorney Brian J.S. Cullen added to party Jeni Mosca(pty:dft), Attorney Brian J.S. Cullen added to party Somersworth School District, School Board(pty:dft).(Cullen, Brian) (Entered: 03/28/2016) |
| 03/29/2016 | 7 | | CERTIFICATE OF SERVICE by Pamela MacDonald, Jeni Mosca, Somersworth School District, School Board re: 6 Notice of Attorney Appearance, *(Amended Certificate of Service)* (Cullen, Brian) (Entered: 03/29/2016) |
| 03/30/2016 | | | |

| | | | |
|---|---|---|---|
| | | | **ENDORSED ORDER granting <u>5</u> Motion to Obtain ECF Login and Password.** *Text of Order: Granted.* **So Ordered by Judge Joseph A. DiClerico, Jr.(dae)** (Entered: 03/30/2016) |
| 04/25/2016 | | | NOTICE OF PRETRIAL CONFERENCE. Pretrial Conference set for 5/25/2016 10:30 AM before Magistrate Judge Andrea K. Johnstone. Discovery Plan due by 5/18/2016. Please note pursuant to Title 28 USC 636(c) and Local Rule 73.1, the parties may consent to have the case reassigned to the Magistrate Judge, but are free to withhold consent without adverse consequences.(vln) (Entered: 04/25/2016) |
| 05/16/2016 | <u>8</u> | | Proposed Discovery Plan filed by Lisa Marie Brady. (Brady stated she mailed copy to Brian Cullen 5/14/16)(dae) (Entered: 05/16/2016) |
| 05/17/2016 | <u>9</u> | | **ORDER Prohibiting Remote Electronic Access to <u>8</u> Plaintiff's Discovery Plan. So Ordered by Magistrate Judge Andrea K. Johnstone.(dae)** (Entered: 05/17/2016) |
| 05/19/2016 | <u>10</u> | | Proposed Discovery Plan *(Defendants)* filed by Pamela MacDonald, Jeni Mosca, Somersworth School District, School Board. (Cullen, Brian) (Entered: 05/19/2016) |
| 05/20/2016 | <u>11</u> | 25 | MOTION to Dismiss for Failure to State a Claim filed by Jeanne Kincaid. Follow up on Objection on 6/6/2016. (Attachments: # <u>1</u> Memorandum of Law in Support of Motion to Dismiss)(Hewey, Melissa) (Entered: 05/20/2016) |
| 05/23/2016 | <u>12</u> | | MOTION to Exclude Defendants claims that Plaintiff violated DNA laws (NH RSA 141 H:2) filed by Lisa Marie Brady.(Brady, Lisa) Modified on 5/24/2016 to remove " Assented to" per Plaintiff (ko). (Entered: 05/23/2016) |
| 05/23/2016 | <u>13</u> | | NOTICE of Attorney Appearance by Demetrio F. Aspiras, III on behalf of Jeanne Kincaid Attorney Demetrio F. Aspiras, III added to party Jeanne Kincaid(pty:dft).(Aspiras, Demetrio) (Entered: 05/23/2016) |
| 05/23/2016 | <u>14</u> | | ANSWER to <u>1</u> Complaint, with jury demand filed by Pamela MacDonald, Jeni Mosca, Somersworth School District, School Board.(Cullen, Brian) (Entered: 05/23/2016) |
| 05/23/2016 | | | **ENDORSED ORDER re <u>10</u> Discovery Plan.** *Text of Order: The pretrial conference scheduled for May 25, 2016 is cancelled and will be rescheduled* |

| | | | |
|---|---|---|---|
| | | | *after resolution of the pending motion to dismiss. The court finds good cause to extend the deadline for issuing the scheduling order pursuant to Fed. R. Civ. P. 16(b) to after the rescheduled pretrial conference.* **So Ordered by Magistrate Judge Andrea K. Johnstone.(ko)** (Entered: 05/24/2016) |
| 05/24/2016 | <u>15</u> | | MOTION to Compel Admissions and Spoilage Warning filed by Lisa Marie Brady.(Brady, Lisa) Modified on 5/24/2016 to remove "Assented to" per Plaintiff (ko). (Entered: 05/24/2016) |
| 05/24/2016 | <u>16</u> | | RESPONSE to Motion re <u>12</u> Assented to MOTION to Exclude Defendants claims that Plaintiff violated DNA laws (NH RSA 141 H:2) filed by Pamela MacDonald, Jeni Mosca, Somersworth School District, School Board. (Cullen, Brian) (Entered: 05/24/2016) |
| 05/27/2016 | <u>17</u> | | Supplemental MOTION to Compel Compliance with Admissions and Interogetories filed by Lisa Marie Brady. Follow up on Objection on 6/13/2016. (Attachments: # <u>1</u> Exhibit)(Brady, Lisa) (Entered: 05/27/2016) |
| 05/31/2016 | <u>18</u> | | RESPONSE to Motion re <u>15</u> Assented to MOTION to Compel Admissions and Spoilage Warning filed by Pamela MacDonald, Jeni Mosca, Somersworth School District, School Board. (Cullen, Brian) (Entered: 05/31/2016) |
| 06/01/2016 | <u>19</u> | | Supplemental MOTION to Clarify *Immunity Motions* filed by Lisa Marie Brady. Follow up on Objection on 6/20/2016. (Attachments: # <u>1</u> Memorandum of Law)(Brady, Lisa) (Entered: 06/01/2016) |
| 06/06/2016 | <u>20</u> | | **ORDER denying <u>12</u> Notice of Motion. So Ordered by Judge Joseph A. DiClerico, Jr.(gla)** (Entered: 06/06/2016) |
| 06/10/2016 | <u>21</u> | | RESPONSE to Motion re <u>17</u> Supplemental MOTION to Compel Compliance with Admissions and Interogetories filed by Pamela MacDonald, Jeni Mosca, Somersworth School District, School Board. (Cullen, Brian) (Entered: 06/10/2016) |
| 06/13/2016 | <u>22</u> | | RESPONSE to Motion re <u>19</u> Supplemental MOTION to Clarify *Immunity Motions* filed by Pamela MacDonald, Jeni Mosca, Somersworth School District, School Board. (Cullen, Brian) (Entered: 06/13/2016) |
| 06/13/2016 | <u>23</u> | 45 | **///ORDER granting <u>11</u> Motion to Dismiss. Jeanne Kincaids motion to dismiss is granted.** |

| | | | |
|---|---|---|---|
| | | | **All claims against her are dismissed. So Ordered by Judge Joseph A. DiClerico, Jr.**(gla) (Entered: 06/13/2016) |
| 06/13/2016 | | | NOTICE OF PRETRIAL CONFERENCE. Pretrial Conference set for 6/27/2016 10:00 AM before Magistrate Judge Andrea K. Johnstone. Please note pursuant to Title 28 USC 636(c) and Local Rule 73.1, the parties may consent to have the case reassigned to the Magistrate Judge, but are free to withhold consent without adverse consequences.(vln) (Entered: 06/13/2016) |
| 06/14/2016 | 24 | | MOTION to Clarify filed by Lisa Marie Brady. Follow up on Objection on 7/1/2016. (Attachments: # 1 Exhibit, # 2 Exhibit)(Brady, Lisa) (Entered: 06/14/2016) |
| 06/14/2016 | | | NOTICE of ECF Filing Error re: Exhibits filed in support of 24 MOTION to Clarify filed by Lisa Marie Brady. No description of exhibits was included. Exhibits shall be followed by a short description of the document and shall not exceed five words. AP 2.5(a). See Properly Attach Exhibits to Pleadings in ECF. NO ACTION REQUIRED – FOR INFORMATIONAL PURPOSES ONLY AND MERELY INTENDED TO EDUCATE ALL PARTIES IN THE CASE. If the filing party has any questions concerning this notice, please contact the judge's case manager at 603–225–1474.(dae) (Entered: 06/14/2016) |
| 06/14/2016 | 25 | 10 | NOTICE OF INTERLOCUTORY APPEAL as to 23 Order on Motion to Dismiss for Failure to State a Claim *See complaint 2–22–16; evidence binder exhibits 20 and 21; Violations of Due process Rights* by Lisa Marie Brady.( Filing fee $ 505, receipt number 0102–1379000.) [NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the Forms & Notices section of the First Circuit website at www.ca1.uscourts.gov, MUST be completed and submitted to the U.S. Court of Appeals for the First Circuit.]<br><br>**NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** (Attachments: |

| | | | |
|---|---|---|---|
| | | | # <u>1</u> Exhibit, # <u>2</u> Exhibit)(Brady, Lisa) Modified on 6/14/2016 to add: Interlocutory (dae). (Entered: 06/14/2016) |
| 06/14/2016 | <u>26</u> | 8 | Appeal Cover Sheet as to <u>25</u> Notice of Interlocutory Appeal filed by Lisa Marie Brady (dae) (Entered: 06/14/2016) |
| 06/14/2016 | <u>27</u> | 9 | Clerk's Certificate transmitting Record on Appeal to US Court of Appeals, documents numbered 11, 23, 25, 26, re <u>25</u> Notice of Appeal. A copy of the Notice of Appeal mailed to all parties this date.(dae) (Entered: 06/14/2016) |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

APPEAL COVER SHEET

1.   D.C.# Civil No. 16cv69-JD                                         C.C.A.#

2.   TITLE OF CASE:   Lisa Marie Brady v. Somersworth School District, School Board, et al.

3.   NAME OF COUNSEL FOR APPELLANT(S):
     See certified copy of docket (ECF registered users not provided with a copy of docket)

4.   NAME OF COUNSEL FOR APPELLEE(S):
     See certified copy of docket (ECF registered users not provided with a copy of docket)

5.   NAME OF JUDGE: Joseph A. DiClerico, Jr., United States District Judge

6.   COURT REPORTER(S) & DATES:
     N/A

     TRANSCRIPTS ORDERED / ON FILE            NO

7.   HEARING / TRIAL EXHIBITS                 N/A

8.   COURT-APPOINTED COUNSEL                  NO

9.   FEE PAID                                 YES

10.  IN FORMA PAUPERIS                        NO

11.  MOTIONS PENDING                          YES*

12.  GUIDELINES CASE                          NO

13.  RELATED CASES ON APPEAL                  NO

     C.C.A. # (IF AVAILABLE):

     DATE OF LAST N OF A:

14.  SPECIAL COMMENTS:

*Motions Pending:

     15 – Motion to Compel Admissions and Spoilage Warning

     17 – Supplemental Motion to Compel Compliance with Admissions and Interogetories

     19 – Supplemental Motion to Clarify Immunity Motions

     24 – Motion to Clarify

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Lisa Marie Brady

v.                                                    Civil No. 16cv69-JD

Somersworth School District, School Board, et al.


CLERK'S CERTIFICATE TO
CIRCUIT COURT OF APPEALS

      I, Deb Eastman-Proulx, Deputy Clerk of the United States District Court for the District of New Hampshire, do hereby certify that the following documents constitute the abbreviated record on appeal to the First Circuit Court of Appeals:

      DOCUMENTS NUMBERED:   11, 23, 25, 26

      The Clerk's Office hereby certifies the record and docket sheet available through ECF to be the certified record and the certified copy of the docket entries.


      IN TESTIMONY WHEREOF, I hereunto set my hand and affix the seal of said Court, at Concord, in said District, on this day, June 14, 2016

      FCPKGN'LØN{ PEJ , Clerk

      **By: /s/ Deb Eastman-Proulx, Deputy Clerk**

      **Jun 14, 2016**


cc:    Lisa Marie Brady, pro se
       Brian J.S. Cullen, Esq.
       Melissa A. Hewey, Esq.
       Demetrio F. Aspiras, III, Esq.

## NOTICE OF APPEAL

### UNITED STATES DISTRICT COURT
### OF DISTRICT OF NEW HAMPSHIRE

Lisa Marie Brady
**Plaintiff**

### 1:16-CV-00069-JD

1. School Board, Somersworth School District (SAU#56)
2. Jeni Mosca, Superintendent SAU#56, in her individual and official capacities
3. Pamela MacDonald, Special Education Director, SAU#56, in her individual and official capacities
4. Attorney Jeanne Kincaid  SAU# 56; Drummond and Woodsum, Portsmouth, NH, in her individual and official  capacities

**Defendants**

PLEASE TAKE NOTICE the undersigned respectfully appeals the decision rendered by Judge DiClerico on 6-13-2016 with regard to dismissing Plaintiff's claim against Attorney Jeanne Kincaid (documents 23).

Attorney Kincaid fraudulently presented herself as a "prosecutor" before the Somersworth School Board and without authority solicited a guilty verdict, resulting in the Plaintiff's termination on January 20, 2014. Attorney Kincaid violated the Plaintiff's due process rights (14th amendment) and maliciously destroyed her teaching career. Attorney Kincaid is not a prosecutor and had no legal right to prosecute the Plaintiff before the Somersworth School Board for violations of NH RSA 141 H: 2.  Please see attached evidence which; was submitted with the Plaintiff's original complaint to the court.  Federal Courts have jurisdiction to rule on matters of violations of constitutional rights involving the denial of due process. The decision rendered by Judge DiClerico, Jr. did not detail this aspect of the Plaintiff's complaint.

I am the plaintiff in the above-entitled action and respectfully request that the Court reconsider the judgement to dismiss Plaintiff's complaint against Jean Kincaid.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.

6-14-2016

June 14, 2016

Lisa Marie Brady, *Pro Se*

Somersworth School Board Hearing

| February 16th 2015 | City Hall | 5:30pm |

February 16th 2015                              City Hall                                    5:30pm

1. **Call to Order:** <u>Austin</u> called the meeting to order for the grievance hearing.  He turned the meeting over to Attorney John Tiegue. <u>Tiegue</u> stated that on February 12th he sent out some ground rules for the hearing tonight.  He stated that the grievance hearing is different from the previous hearings that we had, this hearing we will give the grievant the opportunity to explain the disagreement and explain why she believes that it should be granted.  He stated that this is a hearing for the grievance from January 14th 2015, grievance number five on article 4(B) 2 of the CBA.  He stated that unlike the other hearings we will not have witnesses and there will limited time.  He stated that the maximum time is 45 minutes so each side will have no more than 20 minutes and this will be strictly enforced.  He asked that they stick to the grievance.  He stated that at the end of the twenty minutes they will turn it over to the administration and then the administration will have 20 minutes.  He stated that after each side has gone the board will deliberate in non-public.

2. **Lisa Brady:** <u>Brady</u> stated that in March 2014 she was accused by the school of violating DNA law RSA 141:H2 which involves rules for individuals required to follow HIPPA laws.  She stated that rule she was accused of violating was taken out of context by Somersworth School District on advice of legal counsel and I was unfairly transferred and then terminated from my position.  She stated that she has been told by three different attorneys that she did not violate the law that I have been accused of violating.  I have evidence from the Department of Health and Human Services in regard to the assertion that the law does not apply to me because I am not a covered entity.  She stated that you can see the question that I posed to the Department of Health and Human Services and then on the other side is their response that I am not a HIPPA entity.  She stated that she has asserted this since March of 2014 and have continued for the past year to be accused of violating a law I did not violate.  She stated how upset would you all be if you were being accused of violating a

law you didn't violate and then losing your job.  She stated that the law I was accused of violating falls under the Department of Health and Human Services and does not pertain to individuals who are not required to follow HIPPA.  She stated that teachers are not health care providers or considered other entities.  She stated that in January 2014 of last year I came back from break and someone had vandalized my filing cabinet and bitten my employee identification badge and left a big wad of brown saliva on my badge.  She stated that yes she was creeped out.  She stated that Principal Hilliard was aware that I was going to have DNA testing done because I had a good specimen on my badge so I had DNA testing done at a local lab and I didn't list anyone's names, it was titled badge and mug.  She stated that it is legal at this time in this state to have your private property tested.  Was it the smartest move that I have ever made, no but was it illegal, no.  Is it even against school policy, no and even more importantly Principal Hilliard knew that I was going to have it done unless of course he thought I was joking?  She stated that she strongly suspected her coworker of vandalizing my property and biting my badge because she had a change in personality and wasn't herself and admitted to obtaining oxycotin from two different physicians.  She stated that in March

of 2014 she went up to the SAU to complain about me, that is where it became a problem not at the middle school I had no problems at the middle school, I had a great relationship with Dana, had a great relationship with staff and my students were thriving and every one of them was making progress.  She stated that all my evaluations have been excellent and like most of the teachers in Somersworth I give my heart and soul to the students that I work with and it is my passion.  She stated that when I met at the SAU about my situation I was never allowed to talk with the Superintendent alone about the situation , although she did interview everyone on my team individually she didn't care about what I had to say because I believe her only focus was on retaliating against me.  She stated that the New Hampshire rules of professional conduct with transactions with persons other than clients, these are legal rules from the New Hampshire Bar under truthfulness and statement to others misrepresentation, a lawyer is required to be truthful when dealing with others on a client's behalf but generally has no affirmative duty to inform the opposing party of relevant facts.  A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false.  Attorney Kincaid knows and has known for about a year now that I did not violate a law and still she is asserting in legal documents and having her client SAU 56 testify under oath that I am violating laws, this is a major defamation of character.  She stated that misinterpretation can also occur by partially true but misleading statements that are equivalent to false statements.  She stated that under rule 1.2D under the NH Bar, a lawyer is prohibited from counseling a client in conduct that the lawyer knows is criminal or fraudulent.  She stated that Attorney Kincaid knows that by submitting documents making false allegations against me at my hearing at the department of labor are criminal and fraudulent, a misdemeanor criminal offense but no less a criminal complaint.  She stated that it addresses a situation where a client's crime or fraud takes the form of a lie or a misrepresentation and I stand before you to tell you that Attorney Kincaid has been lying for the past year to this board, to the Superintendent, to hearing officers at the department of labor and anyone who will listen to her that I violated a law that I didn't violate.  She stated that it is defamation of character and it's a torte that involves the communication of false information about a person to a third party and that person suffered injury.  I suffered injury, I was transferred unlawfully from the middle school where I was doing a great job to Maple Wood to another job which was not in the best interest of the school district because I have about 19 years of experience working with autistic children who I was working with at the Middle School and I had just finished getting a post graduate certificate at UNH under autism because I am so passionate about learning, studying and working with autistic kids.  So was it in the  best interest of the school district to take someone with my knowledge base, there are some teachers in district with my passion but very few.  She stated that at the department of labor hearing Principal Hilliard testified that he was not at all concerned about the DNA test that I had completed on my identification badge and the coffee mug and agreed that it didn't become a problem until it went up to the SAU last March 2014.  She stated that Principal Hilliard also testified that I was the best of the best and the best special education teacher in district and that he thought that I was funny.  She stated that I may not seem funny now but I can be at times.  She stated that she had a good relationship with Principal Hilliard, the staff at the middle school, the secretaries I the front office and there are many people that I loved at the middle school and once again my students were thriving.  She stated that the DNA issue was a smoke screen, the real issue was that I

retaliated against for advocating for one of my students.  She stated that false reprimands were placed in my files after I advocated for one of my students and I have evidence to back up all the false allegations and I can back up what I am saying I am not just standing up here saying things that aren't true.  She stated that false reprimands were placed in my file after I advocated for one of my students in March 2013.  I made a complaint against our special education director in September of 2012 on a video that was presenting a student in our district in a false light, they were exploiting him and it is out in the public now.  She stated that before he was fired they hired a consult to write a recommendation that I be terminated based on student privacy laws and the so called expert had indicated that she had done a handful of privacy cases in her 42 years of experience, that is not who I would hire to do testify on matters of privacy unless of course my motive was to do another smoke screen.  She stated that she would be willing to sit down with anyone and go through all of this step by step and show you and prove to you that I did not do what they claim I did.  She stated that Attorney Kincaid and Attorney Tiegue have an ethical duty to the community, the school board and everyone in this community of SAU 56 to report the truth and when you don't you are violating your ethical obligation under the NH bar which has been going on for about a year now.  She stated that she plans to file a complaint with the NH Bar association because they are assisting the district with discriminating against me if this matter isn't cleared up tonight.  She stated that she has a binder full of evidence that she is willing to share with anyone to prove my innocence.  She stated that Attorney Jeanne Kincaid does not have a strong case against me and has no evidence to back up her statements and instead she relies on criticisms and false claims about me.  She stated that insults are the last resort of a lawyer with a crumbling position trying to appear confident.  She stated that every time Attorney Kincaid gets up to speak about me she bashes me, she bashes me, she bashes me and I sit and I listen to it and anyone that works with me at the middle school knows how devoted I am.  You know why I had so many sick days because I didn't take them.  I took 63 days from the sick bank, thank you to the teachers I really appreciate it but all the other time was taken off my sick leave because that is how much sick leave I had because I am devoted to my job.  She stated how much has the district spent on legal fees to fight my case for about a year , for everyone out there listening there is the public right to know, the public has the right to know how much you have spent on Jeanne Kincaid to fight me.  She stated that I ran out of money quick but how much has the district spent on Attorney Tiegue probably nothing compared to what they have spent on Attorney Kincaid.  She stated that last week on February 6th I read in the Fosters that the Somersworth School Budget cuts decimate the system well I wonder how much money was spent on fighting me based on false allegations, how much did this town spend on fighting me and the fight hasn't even begun if my situation is not resolved in a reasonable amount of time I plan to pursue claims against the SAU and individuals involved that have knowingly violated and behaved with the intention to commit harm. She stated that she has endured unsubstantiated defamation of character for which I have been unjustly punished over.  I have a very strong whistleblower complaint case and the district can expect to incur much much more money in legal fees to fight my case.  She stated that I will not give up my fight for justice and truth; the truth will come out in the end.  She stated that honestly after my last experience with the school board I felt that it was completely biased and when I sit here before the meeting and I see Superintendent Mosca talking to all of you, she's friendly with all of you she talks to you all the time why wouldn't anyone think that

you would be biased.  She stated that every one of you would be dismissed from a jury if this was in a real court because you all have a bias and you don't know me, you just hear false things from them and what you have heard is a bunch of bologna and when Attorney Kincaid comes up and speaks and she says something critical of me I want you to say a insults are the last resort of a lawyer with a crumbling position trying to appear confident.  Let's see if she can back up one statement with evidence because she certainly didn't at the Department of Labor hearing and she will not tonight. The violation I was accused of committing is NH RSA 141:H2 and I thank you for hearing me out. 2. **Administration: Jeanne Kincaid:**  <u>Attorney Kincaid</u> stated that in the packet you will have documents when Ms. Brady filed the grievance.  She stated that the first filing was amended on 1/14/15.  If you open up the grievance report she changed the date from 1/12/14 to 1/12/15 that is kind of important.  She is alleging and she submit that it is not crystal clear what she alleging and what I think she is alleging on January 12 2015 superintendent Mosca testified before you and Mr. Hilliard testified before you **and I prosecuted the case**, you know now that Ms. Brady dropped her claim against Mr. Hilliard, the claim rests against Superintendent Mosca for falsely testifying and violating all kinds of torte laws, privacy laws and reputational laws and were both guilty according to Ms. Brady of class B felonies because of this.  She stated that we are here as a grievance violation of the CBA, this is not retrying the three night hearing.  She stated that she is not clear what she is asserting but I think what she is asserting is that Ms. Mosca' s testimony was given solely based on a previous grievance that Ms. Brady filed.  She sites Article 5 section C4 of the CBA and we gave you all copies of the collective bargaining agreement which talks about teachers rights and there shall be no reprisal against a person for filing a grievance claim.  She stated that her claim is that Superintendent Mosca's testimony was unlawful and only given because Ms. Brady filed a previous grievance.  She stated that she is also asserting that the administration violated Article 5 section C5 and that is your just cause, there shall be no disciplinary action against a teacher absent just cause. She stated that remember she is saying that this happened on 1/12/15.  She stated that there are two provisions of the collective bargaining agreement that are at issue.  All based on the Superintendent's testimony about a limited piece DNA testing.  She stated that it states that they accused me of violating DNA laws, it has nothing to do with the video, it has nothing to do with advocacy, it has nothing to do with students, it is limited by her own handwriting here, and it is a narrow focus of the grievance tonight, DNA laws.  She stated that if there was any merit to the claim it would mean that the testimony of the Superintendent was false and I would remind you that you found that the testimony was credible and you made an absolute finding on page 5 of your decision that in fact Ms. Brady's conduct violated RSA 141:H2, the board agreed that she had violated that law.  What she submitted to you tonight has no bearing whatsoever.  She stated that she sent an email on her computer to someone in cyber space about HIPPA what does HIPPA have to do with anything.  Then she asked did I violate FERPA and you know we had a long discussion on FERPA and that has to do with student records and this DNA testing had nothing whatsoever to do with a student.  She stated that when someone says to you it doesn't sound like you violated FERPA well when you take a DNA test of an employee that has nothing to do with the family education right to privacy act which of course only applies to student records.  She stated that on one level this email that she got back was correct but this law which she keeps saying is HIPPA, there is nothing is RSA Chapter 141 H1 that would limit this to HIPPA.  She stated that it says that a person who is defined

as a human being so I think Ms. Brady qualifies as a human being.  If you turn to RSA 141 H2 which you found she violated it says there are a number of exceptions not an issue here it says no genetic testing will be done in this state on any individual that would include a subordinate that you supervise or anywhere on anyone in this state based on bodily fluids which saliva would be a bodily fluid obtained in this state which this happened in your school without prior written and confirmed consent of the individual to be tested and of course that was not done and the results can't be released without the expressed written consent of the person tested.  She stated that you all made that finding on January 20th and it is very consistent with this law, that document that you are seeing tonight should not alter the opinion you made on January 20th.  She stated that the essence of the complaint as I understand it is that Superintendent Mosca would not have testified on a truism.  There is no dispute that Ms. Brady took DNA from a subordinate and had it tested without knowledge of effort.  These facts are not in dispute so how could Superintendent Mosca have falsely done anything because this evidence was testified to by Ms. Brady so her underlying thesis is that the Superintendent falsely accused her is a lie by her own statements in evidence.  She stated and again an absolute finding you made on January 20th.  She stated that there was no reprisal because she filed a grievance; the reprisal was because she violated privacy.  She stated that the second is that she said that there was no just cause.  In your file Principal Hallee writes a two page retort to this whole allegation and she says that if Ms. Brady wished to contest Mr. Hilliard's letter from March 10, 2014 if she disagreed with any of the facts that he alleged, if she disagreed with the finding that he said you violated she had a grievance procedure available to her that she could have exercised within thirty days of that letter and she did not do that.  She stated that Principal Hallee's letter addressed that saying listen the just cause you suffered, the discipline that you suffered was back in March of 2014, the hearing on January 12 2015 was for multiple violations including failure to file procedures under ESL and statewide testing, insubordination, FERPA violations of a student, privacy rights of staff and students and all very telling.  Superintendent wrote a letter on October 14th advising Ms. Brady not to violate the privacy rights of students and she continued to do so which would be insubordination all of those things culminated in the Superintendent recommending to dismiss and the school board's decision.  She stated that if she is alleging that she is grieving this because the DNA testing wasn't just cause for her termination, that was never the charge there were many charges and you remember from that testimony that Superintendent Mosca and Principal Hilliard were very clear, they gave Ms. Brady many opportunities to resolve this.  This isn't just about the DNA testing it is the fallout from that testing, the implications in the class, the relationships with the other staff and ultimately our primary stakeholders are our children, if staff don't conduct themselves in a responsible manner particularly the only professional in that room was Ms. Brady ultimately it's our children that suffer.  She stated that the grievance has no legs because it really isn't a grievance under the collective bargaining agreement.  There is no evidence of retaliation, all the action that the administration has taken has been legitimate non-retaliatory actions as evidenced by the decision that you made on January 20th 2015.

4. **Decision:** <u>Attorney John Tiegue</u> stated that he will close the hearing and the board will decide.  A motion made by <u>Joanne Pepin</u> seconded by <u>Paradis</u> to exit into nonpublic session in accordance with Chapter 91-A: 3 (II) B and C.  VOTE: motion passed, unanimously. Exited into non-public session at 6:10.  A motion made by <u>Paradis</u> seconded by <u>Joanne Pepin</u> to exit out of nonpublic session.  VOTE:

6

motion passed, unanimously.  Exited out of non-public session at 6:30.  A motion made by <u>Brennan</u> seconded by <u>Paradis</u> to deny the grievance by Lisa Brady.  VOTE: motion passed, unanimously.

**2. Adjournment**: A motion made by <u>Gibson</u> seconded by <u>Paradis</u> to adjourn the grievance Hearing. VOTE: motion passed, unanimously. Meeting adjourned at 6:35.

Katie Krauss                                        Pending Board Approval

# DECISION

# In Re:  Lisa Brady

## Introduction

On December 12, 2014, the Superintendent of the Somersworth School District ("District"), Jeni Mosca, wrote to Lisa Brady, a special education teacher, informing Ms. Brady that she, as Superintendent, was recommending that Ms. Brady be dismissed by the Somersworth School Board ("Board"), pursuant to RSA 189:13 and ED 302(h).  On January 9, 2015, January 12, 2015 and January 13, 2015, the Somersworth School Board conducted a public hearing at Ms. Brady's request in accordance with RSA 189:13.  At the conclusion of the testimony, the Board convened in non-public session to discuss the charges and evidence and to render a decision.  The Board voted on each of the charges in the Superintendent's letter of December 12, 2014 and made findings of fact prior to voting on the ultimate issue of dismissal.  Those votes are described below.

## Preliminaries and Hearing

The Somersworth School Board responded to the Superintendent's recommendation of dismissal by convening a hearing on January 9, 2015.  The Board authorized the hiring of Attorney John Teague of the law firm of Upton & Hatfield, LLP to advise the Board and to act as a hearing officer by conducting the hearing process.

Ms. Brady informed the District that she wished to exercise her right to a public hearing and that she would not be represented by counsel.  Attorney Jeanne Kincaid of the law firm of Drummond Woodsum represented the administration throughout the process.

Attorney Teague conducted two conference calls with Ms. Brady and Attorney Kincaid on December 30, 2014 and January 7, 2015.  During the first call, it was decided that the parties

1

would send their proposed exhibits to Attorney Teague by email on January 5, 2015 and file their objections to exhibits by January 7, 2015. Preliminary to the hearing, Ms. Brady had requested that various staff members be subpoenaed to appear at the hearing by the Board. During the conference call on December 30, 2014, Attorney Teague explained that the Board lacked statutory subpoena power and was also prohibited from compelling testimony of staff by the collective bargaining agreement with teachers. Attorney Teague offered two alternatives of affidavit or offers of proof to Ms. Brady so that the expected testimony could be presented.

During the second conference call, Attorney Teague, who by then had read and viewed the several hundred pages of exhibits and materials, discussed the need to maintain confidentiality of both student and staff private information. To that end, since most of the proffered exhibits contained such references or information, Attorney Teague announced his intention to receive the evidence at the hearing as non-public documents pursuant to RSA 91-A:5 II and IV. Attorney Teague also discussed the need to move the hearing into non-public session pursuant to RSA 91-A:3 when testimony was about to include confidential staff or student information as part of the question or answer. Attorney Teague noted that Ms. Brady's preference was to make the whole hearing as public as possible and a commitment was made that the public process, including local television coverage, would be followed whenever confidential information was not involved.

The hearing began January 9, 2015 at 5:30 p.m. The hearing was recorded by a court stenographer and continued to 10:00 p.m. Subsequent sessions of the hearing occurred on January 12, 2015 and on January 13, 2015. The hearing was held in the council chambers of the Somersworth City Hall. The hearing concluded on January 13, 2015 at 8:45 p.m. at which time the Board convened in non-public session to deliberate. Attorney Teague took no part in

deciding the issues in the case other than to assist in the organization of the issues before the Board and to provide assistance in the preparation of a draft written decision. That decision will be presented to the Board for public ratification and approval on January 20, 2015.

The Board made every effort to conduct a full and fair hearing during the three nights it heard the case. Present were Board Members Donald Austin, Kelly Brennan, Joanne Pepin, Jessica Paradis, Dana Rivers, Karen Hiller, Bob Gibson and Ken Bolduc. Board Chairman Austin chaired the meeting and, on nine occasions, entertained motions to go into non-public session pursuant to the applicable sections of RSA 91-A. A roll call vote was taken each time.

The administration presented it case through witnesses: Principal Dana Hilliard, Special Investigator Dr. Wendy Jack, Special Education Director Pamela MacDonald and the Superintendent, Jeni Mosca.

Following the testimony of each witness, Ms. Brady was given an opportunity to ask any questions of the witnesses she wished. Board members were then invited to ask questions directly of each witness. During the testimony, repeated references were made to items in the exhibits of significance to either side. The Administration then rested.

Ms. Brady then put on her case. Ms. Brady's only witness was herself, though references were made in her testimony as to expected testimony or opinions of various staff members, in particular, certain paraprofessionals working in the self-contained classroom at the Middle School.

Following Ms. Brady's testimony, no questions were asked by the Administration. However, many questions were asked by Board members.

By prior agreement, each side was given an opportunity to present both an opening statement at the beginning of the hearing and a closing statement at the end. Both opportunities

were taken.  The Board ruled that it would not allow a Power Point presentation on screen by the

Administration as Ms. Brady was under the impression that Attorney Teague had said that no

Power Point was possible in City Hall during her telephone conversation on January 9, 2015.

### Findings

1.      The Board found that the charge that Ms. Brady acted in an unprofessional and

unethical manner when she sought to have bodily fluids of another staff member tested for

identification without the knowledge or consent of the staff member and thereafter reported the

results of the test to others was sustained by the evidence.  The Board found (by a vote of 7 yes,

1 abstention) that the behavior violated RSA 141-H:2.  School District policies, in particular the

Staff Ethics Policy GBEA (Administration #7), were also cited by the Board as prohibiting this

conduct.

2.      The Board found that the allegations concerning Ms. Brady's repeated

communications to third parties, not connected with the School District, containing non-directory

personal information regarding a student and, further, her doing so after being advised to cease,

was sustained by the evidence.  On a preliminary question as to whether the distribution of this

information by email to dozens of institutions, publications and governmental officials at all

levels, constituted violations of the Family Educational Rights and Privacy Act (FERPA), as the

Board understood that Act, the vote was 7 yes and 1 no.  The Board went on to discuss and point

to the more specific policies of the District, i.e., the Staff Ethics Policy GBEBB (Administration

#6) which contains the following: "District employees will … maintain all privacy and

confidentiality standards as required by law" and the very explicit directive contained in Policy

GBEBB Employee – Student Relations:

> 10.  Staff members shall not disclose information concerning a
> student, other than directory information, to any person not

> authorized to receive such information.  This includes, but is not
> limited to, information concerning assessments, ability scores,
> grades, behavior, mental or physical health and/or family
> background.

Though there was some disagreement as to the extent of the violations, a large majority of the Board found that these policies had been violated by Ms. Brady.  The Board noted that Ms. Brady's belief that the public's right to know, regarding an alleged mischaracterization of a student in a public video, justified further discussions about the student or his team with unauthorized third parties may explain but does not excuse these violations.  While the Board does not dispute Ms. Brady's right to express her opinions regarding a student's educational program, that opinion must be delivered within the confidential confines of the school and team meetings.  Broadcasting that discussion, without explicit parental consent, to the world, steps over the line and violates the spirit and intent of law and District policy.  In the Board's opinion, Ms. Brady's continuing to send emails containing this discussion, after receiving the directive of October 14, 2014 from the Superintendent (Administration 20), supported the Superintendent's charge of insubordination.  The letter contains the following statement:

> In the interim, I remind you to safeguard student privacy and that
> substantial violations of student confidentiality obligations will
> result in disciplinary action up to and including termination.

3.      The charge that Ms. Brady's admitted conduct violated, in a serious and substantial manner, a number of District policies, is supported by the evidence.  In particular, Policy GBEBB, Employee-Student Relations #10 has been disregarded by Ms. Brady on numerous occasions.  Ms. Brady's belief that her suspicions of wrongdoing regarding a video of a student justifies ignoring that student's protected right of privacy is unfounded.  The case law cited by Ms. Brady in her defense is inapposite.  The cases pertain to situations in which the federal FERPA law was used to cover up wrongdoing in the university setting.  The Board has

seen no evidence that Somersworth staff, faculty or administration have participated in wrongdoing with regard to this student or in any kind of cover up of wrongdoing. Ms. Brady made it clear that she disagrees with some methodologies used in seeking to find a means of communication for this nonverbal student. However, in Ms. Brady's view, sincere differences of opinion become the foundation for charges of illegal and deceptive conduct on the part of the Administration and staff. The Board found these charges baseless. In the classroom, Ms. Brady's tendency to turn disagreements into intemperate, unsupported allegations appears to have poisoned the relationship between Ms. Brady and a paraprofessional. As noted above, Ms. Brady violated policy GBEA, the Staff Ethics Policy, particularly the last two bulleted sections when she sought to use bodily fluids to tie the staff member to suspected conduct involving Ms. Brady's cabinet and I.D. badge. In the view of the Board, this behavior contributed to such a breakdown of trust and confidence between supervisor and subordinate that the Superintendent had no choice but to separate and transfer Ms. Brady and the staff member in the manner she saw fit. It is apparent that the decision was not only rejected by Ms. Brady but served as fuel for her campaign to tie the offending administrators to alleged but unsubstantiated crimes and misdemeanors.

Policy JRA (Administration #7) Student Records and Access makes it clear that no school district personnel will divulge or discuss with third parties, student records, defined as "all records, files, documents and other material containing information directly related to a student" beyond directory information. On this issue, members of the Board observed that the charge regarding FERPA was not well defined or explained by the Administration. Nevertheless, on balance, the Board found that Policy JRA has been violated by Ms. Brady particularly given that she was advised in writing to refrain from doing so. The Board concluded its discussion of the

third charge of violation of District policies by taking a vote.  The vote was 7 yes, 1 abstention, on a motion to find the charge substantiated.

4.      The final charge arises from Ms. Brady's repeated statements that she was "not interested" in her new assignment to the Maple Wood Elementary School and insists that she be reinstated at the Middle School in the self-contained classroom.  While Ms. Brady argues continuously of her dedication and passion for working with seriously disabled students, she refuses to acknowledge that her behavior contributed to and made necessary her removal from the Middle School.  The Board found by a unanimous vote that Ms. Brady has abandoned her assigned position at the Maple Wood Elementary School.  The Superintendent's authority to reassign staff is central to the orderly and successful operation of the District and is memorialized in school policy, the collective bargaining agreements with staff and their individual contracts.  Ms. Brady's statements and conduct demonstrate a refusal to accept the Superintendent's decision and, alone, justify the recommendation of dismissal.

In sum, the Board finds that the statutory bases for dismissal have been met.  The Board found by a vote of 7 yes, 1 no, that Ms. Brady's conduct has been immoral.  Following discussion, the Board adopted for clarity the following definition of "immoral" from Dictionary.Ref.com as:

> violating moral principles, not conforming to the patterns of
> conduct usually accepted or established as consistent with
> principles of personal and social ethics.

By a vote of 7 yes, 1 no, the Board found that Ms. Brady's conduct, particularly with regard to her treatment of her subordinate, was unethical and therefore immoral.

The Board found by a vote of 7 yes, 1 no, that Ms. Brady's conduct demonstrates a failure to maintain the competency standards established by the District.  The Board referenced a

number of examples including Ms. Brady's abandonment of her assigned teaching position and her disregard for the obligation to protect the privacy rights of staff and students.

Finally, the Board found by a vote of 8 yes, 0 no, that Ms. Brady has repeatedly failed, after being warned, to conform to regulations prescribed.  In particular, the Board referenced Administration Exhibit 20 in which the Superintendent made it clear that Ms. Brady was to cease any conduct that violated student privacy rights and Administration Exhibit 10 in which she was cited for her failure to administer the state's NECAPS assessment as required by the student's IEP.

A final vote was taken on the Superintendent's recommendation of dismissal subject to ratification in public session.  The vote was unanimous in favor of a motion to support that recommendation of dismissal.

Signed,


Donald Austin, Chairman
Somersworth School Board

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| LISA MARIE BRADY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOMERSWORTH SCHOOL DISTRICT, | ) | Civil Action No. 16-CV-00069-JD |
| and | ) | |
| JENI MOSCA, and | ) | |
| PAMELA MACDONALD, and | ) | |
| JEANNE KINCAID | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## DEFENDANT JEANNE KINCAID'S MOTION TO DISMISS

Defendant Jeanne Kincaid moves this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing all counts of the Complaint alleged against her.  The reason for this motion is that the Complaint fails to state a claim upon which relief may be granted.  Specifically, the facts pled in the Complaint, taken in the light most favorable to Plaintiff, establish that:

1. Plaintiff received due process prior to the termination of her employment;

2. Attorney Kincaid did not act "under color of state law" in that she is not a state actor and did not make the termination decision;

3. Attorney Kincaid is immune from liability for the claims asserted against her by Plaintiff;

4. Attorney Kincaid did not use any legal process against Plaintiff;

5. Attorney Kincaid breached no duty to Plaintiff;

6.   Attorney Kincaid did not terminate Plaintiff's employment.

Therefore, as set forth more fully in the accompanying memorandum of law, the

Complaint fails to state any cognizable claim against Defendant Kincaid and she is

entitled to dismissal, with prejudice, of all claims pled against her in this action.

> */s/ Melissa A. Hewey*
> Melissa Hewey, NHB 17884
> Demetrio Aspiras, NHB 19518
> 100 Int'l Dr, Suite 340
> Portsmouth, NH  03801
> Telephone:  (603) 433-3317
> Fax:  (603) 433-5384
> mhewey@dwmlaw.com
> daspiras@dwmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2016, I electronically filed the above Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to Plaintiff and all counsel of record.

> */s/ Melissa A. Hewey*
> Melissa A. Hewey

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

LISA MARIE BRADY,         )
                                  )
          Plaintiff           )
                                  )
v.                              )
                                  )
SOMERSWORTH SCHOOL DISTRICT,  )     Civil Action No. 16-CV-00069-JD
and                          )
JENI MOSCA, and            )
PAMELA MACDONALD, and     )
JEANNE KINCAID           )
                                  )
          Defendants        )
                                  )

## MEMORANDUM OF LAW OF DEFENDANT JEANNE KINCAID
## IN SUPPORT OF MOTION TO DISMISS

## INTRODUCTION

This is a case brought by Lisa Brady, a former employee of the Somersworth School District (the "District") alleging that the District, its Superintendent, Jeni Mosca, its Special Education Director, Pamela MacDonald, and the District's outside counsel, Jeanne Kincaid, are liable to her for damages arising as a result of the termination of her employment with the District. Prior to her dismissal, the Somersworth School Board (the "Board") held a hearing over three days in January 2015, at which witnesses gave sworn testimony and were subject to cross-examination by Brady. At the conclusion of the hearing, the Board determined that Brady was unethical, immoral, and failed to maintain competency standards established by the District. The Board voted to dismiss Brady from her position in accordance with RSA 189:13.

Rather than appealing the Board's decision to the Superior Court in accordance with RSA 189-14, Brady has chosen to attack it collaterally by suing the District, its Superintendent, its Special Director and Attorney Kincaid in this Court.  Defendant Jeanne Kincaid assisted the District Administration in prosecuting its case for dismissal to the Board.  Brady now accuses Attorney Kincaid of violating her due process rights for actions related entirely to Attorney Kincaid's professional representation of the Administration. While full of conclusory allegations, Brady's Complaint is devoid of any facts that could support her allegations that Kincaid did anything to deny Brady her due process rights or otherwise commit an actionable wrong. Brady simply alleges, without more, that her rights were denied or that the law was violated. Such vague and conclusory statements fall woefully short of plausibly stating a claim against Attorney Kincaid under any theory of recovery. The Complaint should therefore be dismissed as against Attorney Kincaid.

## LEGAL STANDARD

In reviewing a motion to dismiss, the Court must accept as true all factual allegations in the complaint, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570; *Schatz v. Republican State Leadership Comm.*, 777 F.Supp.2d 181, 186 (D. Me. 2011) (citing *Rios-Colon v. Toledo-Davila*, 641 F.3d 1, 4 (1st Cir. 2011)).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  A complaint cannot simply leave open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery.  *Twombly*, *550 U.S.* at 561.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss.  *Id.*  The well-pled allegations must nudge the claim "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

## FACTS

The facts set forth in the Complaint and its voluminous attachments that could be relevant to Brady's claims against Attorney Kincaid are as follows.

Lisa Brady is a licensed special education teacher certified in the State of New Hampshire to teach General Special Education, K-12 and Special Needs.  *Compl*. p. 7.   On December 12, 2014, the Superintendent of the District, Jeni Mosca, wrote to Lisa Brady and informed her that she was recommending that Brady be dismissed by the Board pursuant to RSA 189:13 and that she was entitled to a hearing prior to dismissal. *Compl*. Tab 17.  In that letter, the Superintendent noted that Brady had a record of prior discipline for, among other things, having the saliva of a colleague genetically tested and then reporting the results of such testing to others.

3

*Id.*   In addition to the array of previous misconduct in which Brady engaged, the Superintendent recommended that Brady be dismissed for serious violations of student confidentiality requirements and violation of School Board ethics policies. *Id.*

When the Superintendent recommended Brady's dismissal to the Board in December 2014, she asked Attorney Kincaid to present the Administration's case at the hearing. Attorney Kincaid is an attorney at the Drummond Woodsum law firm, which provides legal services to the District. *Compl*. p. 20.   The Board hired separate counsel, Attorney John Teague, to act as a hearing officer and to advise the Board before, during, and after the Hearing process. *Compl*. Tab 20 at p. 1.   Attorney Jeanne Kincaid presented the Superintendent's case for dismissal at the hearing.   At all times, and pursuant to RSA 189.13, the ultimate decision making authority, including hearing determinations of evidence admissibility or procedure, rested with the Board.

Prior to the hearing, Brady informed the District that she elected not to be represented by counsel.  *Id.*  She requested that the hearing be held in public and Attorney Teague, on behalf of the Board, agreed that would occur whenever confidential student and personnel information was not involved.  *Id.* at p. 2.   The parties submitted several hundred pages of exhibits prior to the hearing, and met twice with the Board's attorney prior to the hearing to iron out procedural issues.  *Id.*

The Board held the hearing on January 9, 12, and 13, 2015.  *Id.*    It was conducted in a trial-like manner and a certified court stenographer recorded the proceedings.  *Id.*  At the hearing, the Administration presented four witnesses.  *Id.*  at p. 3. Brady questioned and cross-examined each of the Administration's witnesses. The Board also asked questions directly of each of the Administration's witnesses. The lengthy testimony included repeated references to numerous exhibits submitted by each side prior to the Hearing. *Id.*

4

After the Administration rested its case, the Board gave Brady an opportunity to present her own witnesses. Brady's only witness was herself, but the Board permitted her to make reference to expected testimony or opinions of other staff members or potential witnesses, notwithstanding their absence from the hearing. *Id.*

After the hearing, the Board convened in non-public session to discuss the charges and evidence and to render a decision. *Id.* at p. 1.  Thereafter, it issued a written decision (Complaint, Tab 20)  in which it found:

1. That "the charge that Ms. Brady acted in an unprofessional and unethical manner when she sought to have bodily fluids of another staff member tested for identification without the knowledge or consent of the staff member and thereafter reported the result of the test to others was sustained by the evidence." *Id.* at p. 4

2.  That "the allegations concerning Ms. Brady's repeated communications to third parties, not connected with the School District, containing non-directory personal information regarding a student and, further, her doing so after being advised to cease, was sustained by the evidence." *Id.*

3. That "the charge that Ms. Brady's admitted conduct violated, in a serious and substantial manner, a number of District policies, is supported by the evidence." *Id.* at p. 5.

4. That with respect to a charge relating to Brady's repeated statements that she was not interested in a position assigned to her by the Superintendent. "Ms. Brady's statements and conduct demonstrate a refusal to accept the Superintendent's decision and, alone, justify the recommendation of dismissal." *Id.* at p. 5.

A majority of the Board members thus found that Brady's conduct was "unethical and therefore immoral," *id.* at p. 7, and that it "demonstrates a failure to maintain the competency standards established by the District," *id.* and the Board unanimously determined that she "has repeatedly failed, after being warned to conform to regulations prescribed." *Id.* at p. 8. The Board thus unanimously voted to support the recommendation of dismissal. *Id.*

## ARGUMENT

Brady's claims against Attorney Kincaid are set forth on pages 20-22 of the Complaint. Read liberally, it appears that she is asserting five claims against Attorney Kincaid:

1) A Section 1983 claim for violation of her due process rights;

2) A claim that Attorney Kincaid "unlawfully simulated legal process when she 'prosecuted' [] Brady for violating RSA 141 H2 [sic]." *Compl*. p. 20;

3) A claim that Attorney Kincaid "acted with deliberate indifference to her legal and ethical obligations in her professional capacity and engaged in immoral and unconscionable behavior" *Compl*. p. 20;

4) A defamation claim; and

5) A claim for wrongful termination.

As discussed more fully below, the Complaint fails to plead a cognizable claim against Attorney Kincaid under any of these theories.

## I. BRADY RECEIVED ADEQUATE PROCESS PRIOR TO DISMISSAL

The majority of Brady's claims against Attorney Kincaid are premised on her unfounded allegation that Attorney Kincaid deprived her of due process before, during, and after her dismissal proceedings. *See Compl.* pp. 21-22. Brady does not, however, allege what process she

claims she was deprived of.  To the contrary, the Complaint and attachments make it clear that she was afforded a full and fair hearing prior to her dismissal.[1]

"The Due Process Clause of the Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 88 (1st Cir. 2014)(citing U.S. Const. amend. XIV, § 1). )). To maintain a procedural due process claim, a plaintiff must show that "(1) it was deprived of a protected property interest, and (2) the procedures attendant to that deprivation were constitutionally inadequate." *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 11 (1st Cir. 2013). The due process analysis requires a balancing of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*In re School Administrative Unit # 44*, 162 N.H. 79 (N.H. 2011).

In New Hampshire, the school board has the sole authority to dismiss a teacher and "may dismiss any teacher found by them to be immoral, or who has not satisfactorily maintained the competency standards established by the school district, or one who does not conform to regulations prescribed." RSA 189:13. By administrative rule, the superintendent is charged with recommending "the dismissal of certified staff to the board, which has the authority to dismiss in accordance with RSA 189:13." *N.H. Admin. Rules, Ed* 302.02(h). The Department of Education Administrative Rules also set forth the minimum requirements for ensuring due process in

---

[1] Brady also asserts that Attorney Kincaid denied her a hearing in August 2014.  *See Compl.* p. 21.  First, any such claim must be brought against the entity that denied her a hearing; Attorney Kincaid is neither the Administration nor the School Board.  Second, Brady appealed the District's decision to transfer her to a different school in March 2014 to the New Hampshire Board of Education in September 2014, which denied her a hearing, for the same reasons outlined in Attorney Kincaid's letter to Brady's then counsel.  *See Compl,* Tab 13,  pp. 1, 3, 9-10.  There is no allegation that Brady appealed the State Board of Education's determination and she did not.

proceedings before a local school board. *See N.H. Admin. Rules, Ed* 204.02.[2] In *School*

*Administrative Unit #44,* the Court summarized the steps a school board must follow to resolve

disputes between individuals and the school system, including teacher dismissals, as follows:

> The board must "[p]rovide an opportunity for a hearing when the legal rights, duties or
> privileges of a party are threatened"; "[p]rovide notice of such a hearing"; "[c]onduct a
> hearing in a manner assuring due process"; " [e]stablish an adequate record in all
> contested cases"; and "[i]ssue timely decisions and orders." At the hearing, formal rules
> of evidence are not applicable; the hearing must be either "public or nonpublic consistent
> with the provisions of the [Right-to-Know law]"; and during the hearing, the party, or a
> party's representative, must be allowed to "examine any and all witnesses." The board
> must include a statement that it has complied with all of the requirements of the Right-to-
> Know law, including compliance with all the record-keeping requirements of the law.

*School Administrative Unit #44,* 162 N.H. at 84-5(quoting *N.H. Admin. Rules, Ed* 204.01(a) and

204.01(b)(3)-(4))(internal citations omitted).

At the hearing, the school board sits as the trier of fact and is "presumed to be of

conscience and capable of reaching a just and fair result." *In Re Hopkinton Sch. Dist.*, 151 N.H. 478,

481 (2004). The standard practice is for the superintendent to present or prosecute their case

against the teacher. Often times, as here, the superintendent is represented by counsel and

counsel conducts the proceedings. The New Hampshire Supreme Court has already made clear

that a teacher who receives the process set forth in these rules, has "received all the process that

[is] due at [a] termination hearing." *In re School Administrative Unit # 44*, 162 N.H. 79, 87

(2011) (rejecting teacher's claim that the lack of certain pre-hearing discovery was a denial of

due process). This is because it is well settled that while a "tenured public employee is entitled to

oral or written notice of the charges against him, an explanation of the employer's evidence, and

an opportunity to present his side of the story...[t]o require more than this prior to termination

---

[2] The administrative rules set forth specific requirements for teacher nonrenewal hearings. *See N.H. Admin. Rules, Ed* 204.02. However, the District's recommendation to the Board was to terminate Brady's employment contract. This proceeding was not a nonrenewal hearing.

would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

Here, Brady does not claim that the District did not provide adequate notice of its intention to take adverse action against her or adequate notice of the substance of the accusations. Brady does claim that she was denied a pre-deprivation hearing. Brady does not claim that she was denied the opportunity to question adverse witnesses. Brady does not claim that she was denied the opportunity to present her own witnesses or speak on her own behalf. Brady does not claim that the Attorney Kincaid, or any other Defendant, failed to follow the procedures set forth in Rule 204.01. In short, Brady pleads no facts that could support a claim that she was denied due process prior to being dismissed.

To the contrary, as the attachments to her Complaint establish, she was afforded all the procedures set forth in the Rule. *See Compl.* Tabs 17, 20. Specifically, Brady participated fully in the three day hearing, which was recorded and transcribed in order to "establish an adequate record." During the hearing, Brady examined each and every witness presented by the Administration and testified on her own behalf. Only after giving the Board a full opportunity to be heard did the Board issue its decision. Under these facts, and "given the elaborate process provided to her prior to termination, the risk of an erroneous deprivation of her right to continued employment and reputation is minimal." *In re School Administrative Unit # 44*, 162 N.H. at 85. Brady has therefore failed to state a claim for violation of her due process rights with respect to the termination of her employment.

Finally, Brady fails to allege any facts to support her assertion that Attorney Kincaid denied her due process. The Board, by statute and in reality, conducted the hearing, made the determination and issued its decision. Attorney Kincaid did not advise or represent the Board.

Accordingly, to the extent that Brady is asserting a denial of due process, that claim exclusively rests against the Board, to which Attorney Kincaid had no representative authority.

## II. BRADY HAS FAILED TO STATE A CLAIM FOR RELIEF UNDER SECTION 1983 AGAINST ATTORNEY KINCAID BECAUSE SHE IS NOT A STATE ACTOR

Brady's Section 1983 claims against Attorney Kincaid must fail because Attorney Kincaid is not a state actor, and was not acting under color of law. Attorney Kincaid was simply discharging her professional duties to her client, the District, and did nothing to deprive Brady of any right, privilege, or immunity.

Section 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting under color of state law. 42 U.S.C. § 1983. The purpose of 42 U.S.C. § 1983 is "to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'" *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (citing *Ex Parte Virginia*, 100 U.S. 339, 346 (1879)).  In order to establish a claim cognizable under § 1983, Brady must show 1) a violation of a right secured by the Constitution of the United States 2) proximately caused 3) by the conduct of a person 4) who acted under color of law. *Adickes v. Kress & Co.*, 398 U. S. 144, 150 (1970). In the absence of a factual basis for *any* element, a complaint does not state a claim under § 1983. *See, e.g., Baker v. McCollan*, 443 U.S. 137, 140 (1979).

 "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Manufacturers Mutual Insurance Company v. Sullivan*, 526 U.S. 40, 50 (1999). In other words, only state actors acting under color of law can be held liable for § 1983 claims. Attorney Kincaid is a private attorney, not a government employee. While Brady has broadly alleged that Attorney Kincaid acted "under color of law," Brady has

failed to cite a single fact in support of this conclusion. To the contrary she has specifically alleged that she is an attorney with Drummond Woodsum. *Comp*. p.20. Accordingly, the well pled facts of the Complaint establishes that Attorney Kincaid was acting in her professional capacity as a private attorney representing the interests of the Superintendent and was not a state actor acting under color of law.

While the First Circuit has not yet addressed the issue, other courts have held that the "conduct of an attorney acting in his professional capacity while representing his client does not constitute action under color of state law for the purposes of § 1983." *Beedle v. Wilson*, 422 F.3d 1059, 1073 (10th Cir. 2005)(citing *Goetz v. Windsor Cent. School Dist.*, 593 F.Supp. 526, 528 (N.D.N.Y. 1984)(holding that a private attorney representing a school district is not a state actor)); *see also Luo v. Baldwin Union Free School District,*12-CV-3073 (E.D.NY 2013)("To the extent that Plaintiff's claims against [school district's attorney] arise out of her legal advice to [the assistant superintendent] or in her role as advocate for the District, [attorney] was not acting under color of state law"). Indeed, to hold an attorney liable for actions taken on behalf of a client would create "a conflict between the attorney's duties to protect himself and to zealously represent his client." *United States General, Inc. v. Schroeder*, 400 F. Supp. 713, 717 (E.D. Wis.1975).

Furthermore, even assuming that Attorney Kincaid could be deemed a state actor, her role was limited to presenting evidence supporting the Superintendent's dismissal recommendation to the District board, a legislative body. Attorney Kincaid did not exercise any authority or assert any power under color of law, but merely acted as counsel for the local superintendent. The Board was ultimately responsible for determining what procedures to follow before, during, and after the hearing. The Board was ultimately responsible for reaching

conclusions of fact and making a determination as to whether or not to dismiss Brady from her

position.  Attorney Kincaid simply discharged her professional obligations by advocating on

behalf of her client, the Administration. As Attorney Kincaid is neither a state actor nor acted

under color of law, the § 1983 claims against her must be dismissed.

## III. ATTORNEY KINCAID IS IMMUNE FROM LIABILITY

It is well settled that attorneys are protected from liability for statements made and

actions taken during and related to judicial and quasi-judicial proceedings by an absolute

litigation privilege.[3] This is because all "statements made in the course of judicial proceedings

are absolutely privileged from civil actions, provided they are pertinent to the subject of the

proceeding." *McGranahan v. Dahar*, 119 N.H. 758, 763 (1979).

 "New Hampshire law provides 'very broad protection' to statements made in the course

of judicial proceedings." *Hugel v. Milberg, Weiss, Bershad, Hynes & Lerach, LLP,*, 175 F.3d 14,

16 (1st Cir. 1999)(dismissing claim for defamation and legal malpractice against law firm for

statements made in a complaint filed on behalf of a client). The absolute litigation privilege "can

be traced back to medieval England." *Simms v. Seaman*, 69 A.3d 880, 885 (Conn.

2013)(summarizing the history of the litigation privilege). As the United States Supreme Court

explained in *Briscoe v. Lattue,* 460 U.S. 325 (1983), the privilege arises from the need to "assure

that judges, *advocates*, and witnesses can perform their respective functions without harassment

or intimidation." *Id.*  at 335 (quotation omitted)(emphasis added).

This privilege applies equally to quasi-judicial proceedings such as the hearing in this

case. *See, e.g.,  Rioux v. Barry*, 283 Conn. 338, 344, 927 A.2d 304, 308 (2007) (indicating that

absolute immunity bars defamation claims that arise from statements made in course of judicial

---

[3] While Brady baldly asserts claims against Attorney Kincaid in her "individual capacity," Brady has not alleged a single fact which would support an inference that any statements were made or actions were taken in Attorney Kincaid's individual capacity or outside the scope of her representative capacity.

or quasi-judicial hearings); *Frisk v. Merrihew*, 116 Cal. Rptr. 781, 783 (Ct. App. 1974) (school board meeting). In New Hampshire, courts examine the similarity of the hearing to a judicial proceeding in assessing whether an absolute privilege should apply. *See Pickering v. Frink*, 123 N.H. 326 (1983); *Supry v. Bolduc*, 112 N.H. 274, 276 (1972). Here, the hearing was conducted in public, the witnesses were under oath, the hearing was transcribed by a court reported, and the parties were permitted to fully cross-examine each witness. Indeed, the primary distinction between this hearing and a typical judicial proceeding is the fact that the rules of evidence did not apply.

Even if the absolute judicial privilege does not apply, Attorney Kincaid's statements were "made in good faith,  for a justifiable purpose, and with a belief, founded on reasonable grounds, of [their] truth ...," entitling her to a conditional privilege rendering her immune from liability in the instant case. *Palmer v. Concord*, 48 N.H. 211, 217 (1868); *See generally Pickering v. Frink*, 123 N.H. 326 (1983); *Supry v. Bolduc*, 112 N.H. 274, 276 (1972).

Regardless of whether Attorney Kincaid is entitled to an absolute or conditional privilege, it is clear that all common law privileges apply to § 1983 claims, as "members of the 42d Congress were familiar with common law principles, including defenses previously recognized in ordinary tort litigation, and that they likely intended these common law principles to obtain, absent specific provisions to the contrary."  *City of Newport v. Fact Concerts Inc.*, 453 U.S. 247, 258 (1981). In light of these common law principles, the United States Supreme Court has held that, with respect to § 1983 claims, state judges are absolutely immune from liability, *Pierson v. Ray*, 386 U.S. 547 (1967), state prosecutors are absolutely immune from liability, *Imbler v. Pachtman*, 424 U.S. 409 (1976), and private witnesses are absolutely immune from liability, *Briscoe,* 460 U.S. at 334. While the United States Supreme Court has not directly

addressed absolute immunity from § 1983 claims for private attorneys representing school districts during dismissal actions, the reasoning set forth in the above line of cases applies equally to the case at bar. Namely, that counsel's "participation in bringing the litigation to a just -- or possibly unjust -- conclusion is equally indispensable." *Briscoe*, 460 U.S. at 345-346.

In our system, "[a]n attorney is given latitude to pursue legal rights that he deems necessary and proper precisely to avoid the inevitable conflict that would arise if he were forced constantly to balance his own potential exposure against his client's best interest." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015) (internal citations omitted).  Attorney Kincaid was discharging her professional duties to a client when she represented the Administration at the hearing, and she is therefore immune from liability. The hearing was quasi-judicial in nature and the litigation privilege applies, in either an absolute or conditional fashion. If Attorney Kincaid were not entitled to these privileges, she, and every other attorney representing school districts in dismissal hearings, would have to balance her own exposure against her client's best interest, an absurd and unjustified result.

## IV.  ATTORNEY KINCAID DID NOT USE ANY LEGAL PROCESS AGAINST BRADY

In addition to her due process claim, Brady also alleges that Attorney Kincaid "violated [RSA] 638:14" because she "unlawfully simulated legal process when she 'prosecuted' [] Brady for violating RSA 141 H2 [sic]." *Compl*. p. 20. RSA 638:14 applies only when one "knowingly…sends, mails, or delivers…a notice or other writing which has no judicial or other sanction, but which in its format or appearance *simulates a summons, complaint, court order or process*…" with the "purpose to procure the compliance of another" the person's request. (Emphasis added.) Here, Brady has not and cannot allege that Attorney Kincaid ever sent, mailed, or delivered any writing which simulated a summons, complaint, court order or process

14

in order to procure her compliance with any request. Moreover, RSA 638:14 is a criminal statute, it does not provide a private cause of action, and Brady lacks standing to enforce it in this court. For the foregoing reasons, Brady's simulated legal process claim must be dismissed.

## V. ATTORNEY KINCAID DID NOT BREACH HER LEGAL AND ETHICAL DUTIES

Brady also claims that Attorney Kincaid "acted with deliberate indifference to her legal and ethical obligations in her professional capacity and engaged in immoral and unconscionable behavior when she turned [] Brady's school board hearing into a court of law; trying to solicit a judgement from the SAU 56 school board member with regard to guilt related to violations of a NH Statute that [] Brady had never been charged with violating…" *Compl*. p. 20. Brady appears to be asserting a claim sounding in negligence against Attorney Kincaid for breach of a legal or ethical duty. However, Attorney Kincaid owed no duty to Brady and therefore Brady lacks standing to bring a claim for breach. Moreover, Brady has failed to allege any facts that show that Attorney Kincaid's actions did not comport with her legal and ethical obligations. Therefore, Brady's claim alleging that Attorney Kincaid breached her legal and ethical duties must be dismissed.

As a threshold matter, "the concept of 'duty' ... arises out of a relation between the parties and the protection against reasonably foreseeable harm." *Morvay v. Hanover Insurance Co.,* 127 N.H. 723, 725 (1986). In order to recover a plaintiff must show that "there exists a duty, whose breach by the defendant causes the injury for which the plaintiff seeks to recover." *Goodwin v. James*, 134 N.H. 579, 583 (1991), *quoting Rounds v. Standex International*, 131 N.H. 71, 76, 550 A.2s 98, 101 (1988). In the context of an attorney's duties, the New Hampshire Supreme Court has held that "for a nonclient to succeed in a negligence action against an attorney, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or

influence the third party." *MacMillan v. Scheffy*, 147 N.H. 362, 364 (2001), *quoting Pelham v. Grieshemer*, 92 Ill. 2d 13 (1982). "[W]here a client's interest is involved in a proceeding that is adversarial in nature, the existence of a duty of the attorney to another person would interfere with the undivided loyalty which the attorney owes his client and would detract from achieving the most advantageous position for his client." *Id.* at 365.  There can be no serious contention based on the facts pled in this Complaint that the purpose of the relationship between Attorney Kincaid and the District was to benefit Brady.

In *MacMillan*, the buyers of a piece of real property brought suit against the seller and the seller's attorney for the omission of a restrictive covenant on the deed drafted by the seller's attorney. The court declined to find a duty between the seller's attorney and the buyers because "[t]here was no evidence that the primary purpose of employing [the attorney] to draft the deed . . . was to benefit or influence the [buyers]." *Id.*

Attorneys have absolute immunity for defamation claims arising from statements made relative to judicial proceedings, including those made in court pleadings. *See Hugel v. Milberg, Weiss, Bershad, Hynes & Lerach, LLP,*, 175 F.3d 14 (1st Cir. 1999)(dismissing claim for defamation and legal malpractice against law firm for statements made in a complaint filed on behalf of a client). This privilege has been codified in the Restatement of Torts:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Restatement (Second) of Torts § 586 (1977).

## VI.  ATTORNEY KINCAID DID NOT TERMINATE BRADY'S EMPLOYMENT

Finally, Brady alleges that Attorney Kincaid's "actions directly resulted in [] Brady's wrongful termination," *Compl. p.* 22, thus apparently asserting a wrongful termination claim

against Attorney Kincaid.  In New Hampshire "wrongful termination is a cause of action in tort." *Porter v. City of Manchester*, 151 N.H. 30, 38 (2004). To prevail, a plaintiff must prove: "(1) [that] the termination of employment was motivated by bad faith, retaliation or malice; and (2) that she was terminated for performing an act that public policy would encourage or for refusing to do something that public policy would condemn." *Karch v. BayBank FSB*, 147 N.H. 525, 536 (2002). Brady's claim against Attorney Kincaid must fail because Attorney Kincaid did not terminate Brady's employment, the Board did. This is true both as a matter of fact, *Compl.* Tab 20 and a matter of law.  RSA 189:13. Brady's wrongful termination claim should therefore be dismissed.

## CONCLUSION

For all of the forgoing reasons, this Court should dismiss the Complaint as against Defendant Jeanne Kincaid with prejudice for failure to state a claim

May 20, 2016

> */s/ Melissa A. Hewey*
> Melissa Hewey, NHB 17884
> Demetrio Aspiras, NHB 19518
> 100 Int'l Dr, Suite 340
> Portsmouth, NH  03801
> Telephone:  (603) 433-3317
> Fax:  (603) 433-5384
> mhewey@dwmlaw.com
> daspiras@dwmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2016, I electronically filed the above Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to Plaintiff and all counsel of record.

> */s/ Melissa A. Hewey*
> Melissa A. Hewey

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Lisa Marie Brady

    v.                                        Civil No. 16-cv-069-JD
                                                  Opinion No. 2016 DNH 100
Somersworth School District,
School Board, et al.


O R D E R

    Lisa Marie Brady, proceeding pro se, brings federal and
state claims against the School Board of the Somersworth School
District; Jeni Mosca, the Superintendent of Schools; Pamela
MacDonald, the Special Education Director; and Jeanne Kincaid,
counsel for the school district, arising from the termination of
Brady's employment.  Kincaid moves to dismiss the claims against
her pursuant to Federal Rule of Civil Procedure 12(b)(6).  Brady
did not file a response to the motion.


Standard of Review

    In considering a motion under Rule 12(b)(6), the court
assumes the truth of the properly pleaded facts and takes all
reasonable inferences from those facts that support the
plaintiff's claims.  Mulero-Carrillo v. Roman-Hernandez, 790
F.3d 99, 104 (1st Cir. 2015).  The court also considers

documents submitted with the complaint, "matters of public record, and facts susceptible to judicial notice." Guadalupe-Baez v. Pesquera, --- F.3d ---, 2016 WL 1592690, at *2 (1st Cir. Apr. 20, 2016). Conclusory legal allegations, however, are not credited for purposes of a motion to dismiss. Id. at *3. Based on the properly pleaded facts, the court determines whether the plaintiff has stated "a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## Background

The allegations in the complaint are not presented in a coherent sequential narrative but instead state legal conclusions with reference to documents and data submitted with the complaint. The following background information pertaining to the claims against Jeanne Kincaid is summarized from the complaint.

Brady is a licensed special education teacher who was tenured in the Somersworth School District and was working at the Somersworth Middle School. While Brady was working there, staff in the school district made a film called "Axel" about a special education student in the district. The film was funded by an educational grant. Brady disagreed with the methods that were used and shown in the film.

2

In September of 2012, Brady complained to the administrators of the Somersworth School District about the film and also filed complaints of criminal fraud based on the grant for the film with "multiple NH State and federal agencies." Brady was dissatisfied with the responses to her complaints and notified the press about her charges of criminal fraud against the Somersworth School District.  In March of 2013, Pamela MacDonald put a warning in Brady's employee file.  Brady disputed the warning with a written rebuttal and a grievance.

In March of 2014, Mosca accused Brady of violating RSA 141-H:2 and transferred Brady from the middle school to an elementary school in the district.[1]  Brady's counsel accused the school district of violating New Hampshire's Whistleblower Act. Brady made charges of educational grant fraud against Mosca, MacDonald, and others to the New Hampshire Commissioner of Education.  In September and October of 2014, Brady tried unsuccessfully to appeal the decision to transfer her to the New Hampshire Department of Education.  Brady also brought a

---

[1] Chapter 141-H is titled "Genetic Testing," and RSA 141-H:2 provides the conditions under which genetic testing may be done. Mosca's accusation against Brady arose from a dispute between Brady and another staff member, during which Brady sent samples of the staff member's saliva for testing.  Mosca accused Brady of sharing the results of the test with other members of the staff.

complaint to the New Hampshire Department of Labor, accusing the Somersworth School District of violating the Whistleblowers' Protection Act.[2]

Mosca hired an investigator to address the issues of Brady's complaints and activities.  The investigator issued a report on December 4, 2014, with findings that Brady had violated the Family Educational and Privacy Act and the Individuals with Disabilities Education Act, had "behaved in a non-professional manner, in violation of the Somersworth Staff ethics policy," and was insubordinate to the superintendent. Mosca recommended that Brady be terminated.

A hearing was held before the school board over a period of three days in January of 2015.  The school board hired an attorney, John Teague, to act as a hearing officer and to advise the school board.  After the hearing, the school board found that Brady had acted in an unprofessional manner by having a staff member's DNA tested, that her communications with parties outside the school district about the student involved in the

_____

[2] The complaint provides little information about the Department of Labor proceedings.  The exhibit identified as Department of Labor documents includes only the school district's motion to dismiss, Brady's response, a letter to Brady from the Commissioner of the New Hampshire Department of Education, and a document identified as Brady's complaint of educational grant fraud filed with the New Hampshire Department of Justice.

film violated federal law and school district policies, and that
Brady abandoned her position at the elementary school after her
transfer there.  Brady was terminated on January 20, 2015.

Jeanne Kincaid is an attorney with the firm of Drummond
Woodsum in Portsmouth, New Hampshire.  Kincaid represented the
school district during the Department of Labor proceedings and
during Brady's termination hearing before the Somersworth school
board.[3]  Brady challenges Kincaid's actions taken as counsel for
the school district.

## Discussion

Although the complaint does not set forth separate claims
in counts, it appears that Brady intends to bring federal claims
under 42 U.S.C. § 1983 against Kincaid for violating her rights
to due process and free speech and state law claims for
defamation and violation of RSA 638:14.  Kincaid moves to
dismiss the claims against her on the grounds that Brady
received due process, that Kincaid is not a state actor for
purposes of Brady's federal claims under § 1983, that Kincaid is
immune from liability for the state law claims, that Kincaid did
not use legal process against Brady, that Kincaid did not

---

[3] The school board held another hearing in February of 2015 on
Brady's grievance under the Collective Bargaining Agreement that
challenged the school district's conclusion that she had
violated RSA 141-H:2.  The grievance was denied.

violate her legal or ethical duties, and that Kincaid did not terminate Brady's employment.[4]  Brady did not file a response to the motion to dismiss, and therefore, she provides no opposition to the matters Kincaid raises.

A.  <u>Federal Claims</u>

Brady brings claims under § 1983 that Kincaid violated her rights to due process and free speech.  Section 1983 provides a cause of action against a person who violates federal law while acting under color of state law.  <u>Santiago v. Puerto Rico</u>, 655 F.3d 61, 68 (1st Cir. 2011).  Therefore, to allege a cognizable claim under § 1983, a plaintiff must provide facts to show that the defendant acted under color of state law and that the defendant deprived the plaintiff of federally secured rights. <u>Id.</u> at 68.

A private party cannot be liable under § 1983 unless the plaintiff can show that the defendant's action "can be classified as state action."  <u>Jarvis v. Village Gun Shop</u>, 805 F.3d 1, 8 (1st Cir. 2015).  "It is only in rare circumstances

---

[4] Kincaid interprets the complaint to allege additional state claims for violation of her professional ethical obligations and for wrongful termination.  Because Kincaid did not represent Brady or owe her any professional duty and did not terminate her employment, to the extent that Brady intended to bring those claims, they are meritless.

that private parties can be viewed as state actors."  Id.
(internal quotation marks omitted).  "The Supreme Court has
mapped out three routes that can lead to a finding that a
private party 'may fairly be said to be a state actor,'" which
are joint action with the state, performing a public function,
and state compulsion.  Jarvis, 805 F.3d at 8 (quoting Lugar v.
Edmondson Oil Co., 457 U.S. 922, 937 (1982)).

     Generally, private attorneys who are representing clients
are not state actors for purposes of § 1983.  See Polk County v.
Dodson, 454 U.S. 312, 318 (1981); Glotfelty v. Karas, 512 F.
App'x 409, 414 (5th Cir. 2013); Angelico v. Lehigh Valley Hosp.,
Inc., 184 F.3d 268, 277 (3d Cir. 1999); K.D. v. G.T.N., 2016 WL
612744, at *3-*4 (W.D. Pa. Feb. 16, 2016); Smith v. McMaster,
2015 WL 5178507, at *8 (D.S.C. Sept. 3, 2015); Rose v. City of
Sierra Vista, 2015 WL 6768979, at *4 (D. Ariz. Aug. 24, 2015).
A private attorney does not become a state actor by representing
a public entity.  Dyer v. Maryland State Bd. of Educ., --- F.
Supp. 3d ---, 2016 WL 2939740, at *10 (D. Md. May 20, 2016).
Similarly, a private attorney hired to represent a school
district is not a state actor.  Watson v. Grady, 2010 WL
3835047, at *8 (S.D.N.Y. Sept. 30, 2010) (citing cases).

     There is no dispute that Kincaid is an attorney in private
practice and is not a state employee.  She was hired by the

school district to represent the district during its proceedings with Brady.  Brady provides no factual allegations that suggest Kincaid's actions fit one of the three circumstances when a private party may be deemed to have engaged in state action. Instead, the allegations in the complaint show that Kincaid acted as counsel for the school district and was not a state actor for purposes of § 1983.

Because Brady has not alleged facts to show that Kincaid was a state actor during the relevant events, her claims against Kincaid under § 1983 must be dismissed.

B.  Underline State Claims

Brady's complaint is construed to raise two state law claims.  She alleges that Kincaid violated RSA 638:14 by "prosecuting" her for violating RSA 141-H:2 in the context of the school board termination proceeding.  Brady also alleges that Kincaid defamed her by making reference to Brady's violation of RSA 141-H:2 during the Whistleblowers' Protection Act proceeding before the Department of Labor.

1.  Violation of RSA 638:14

RSA 638:14 is part of New Hampshire's criminal code.  The statute provides that "[a] person is guilty of a misdemeanor who, with a purpose to procure the compliance of another with a

request made by such person, knowingly sends, mails or delivers
to such a person a notice or other writing which has no judicial
or other sanction, but which [simulates legal process]."  If
Brady intended to bring a claim against Kincaid for violating
RSA 638:14, the claim is meritless.

Generally, violation of a criminal statute does not provide
a private cause of action.  See Berry v. Watchtower Bible &
Tract Society of N.Y., Inc., 152 N.H. 407, 411 (2005); see also
Tracy v. Hayward, 2005 WL 757573, at *1 (D. Me. Feb. 24, 2005).
Brady has not shown that the New Hampshire Supreme Court
recognizes a private cause of action for violation of RSA
638:14.  Federal court is not an appropriate forum to raise a
new and novel theory of state law.  See Rared Manchester NH, LLC
v. Rite Aid of N.H., Inc., 693 F.3d 48, 54 (1st Cir. 2012).

In addition, Brady alleges no facts to show or even suggest
that Kincaid simulated legal process or sought to obtain Brady's
compliance with a request Kincaid had made.  The complaint lacks
facts to show that Kincaid wanted Brady's compliance and that
she sent, mailed, or delivered any notice to Brady which
simulated a document of legal process.  Therefore, to the extent
Brady intended to bring a claim for violation of RSA 638:14, the
claim is dismissed.

2.  Defamation

Brady alleges that Kincaid defamed her by stating during the proceeding before the New Hampshire Department of Labor that Brady's actions "contravened" New Hampshire law on genetic testing.[5]  Brady initiated that proceeding in October of 2014 with charges that the school district retaliated against her in violation of the Whistleblower Act.  Kincaid represented the school district in the Department of Labor proceeding.

To state a claim of defamation under New Hampshire law, a plaintiff must allege facts that show "the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, assuming no valid privilege applies to the communication."  Thomas, 155

---

[5] To the extent Brady may have intended to allege defamation based on a statement by Kincaid that is reflected in the minutes of the Somersworth School Board grievance hearing held on February 16, 2015, that effort is unavailing.  The statement that Brady quotes is taken from the minutes of the hearing where Kincaid said, in pertinent part, that "you [the school board] made an absolute finding on page 5 of your decision [to terminate Brady's employment] that in fact Ms. Brady's conduct violated RSA 141-H:2."  Because it is undisputed that the school board did make that finding, Kincaid's statement is true and cannot be grounds for a defamation claim.  See Complaint, Exhibit 21, Finding 1 ("The Board found (by a vote of 7 yes, 1 abstention) that the behavior violated RSA 141-H:2."); see also Thomas v. Tel. Publ'g Co., 155 N.H. 314, 335 (2007) ("One who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true.") (internal quotation marks omitted).

N.H. at 321.  Kincaid contends the defamation claim must be dismissed because her statement in the motion filed in the Department of Labor proceeding was privileged based on the protection provided to statements made in the context of judicial and quasi-judicial proceedings.[6]

Under the Whistleblowers' Protection Act, RSA chapter 275-E, if certain conditions are met, an employee "may obtain a hearing with the commissioner of labor or a designee appointed by the commissioner."  RSA 275-E:4, I.  Following a Department of Labor hearing, the commissioner or the appointed designee will render judgment on the complaint and order appropriate remedies.  Id.  The judgment may be appealed pursuant to RSA 541.  RSA 275-E:4, II.

"It is well established that statements made in the course of judicial proceedings are absolutely privileged from liability in civil actions, provided they are pertinent to the subject of the proceedings."  Pickering v. Frink, 123 N.H. 326, 330 (1983); see also Hugel v. Milberg, Weiss, Bershad, Hynes & Lerach, LLP,

---

[6] Brady cites the following statement, which was part of the school district's motion to dismiss Brady's Whistleblower Act charges:  "As supported by Superintendent Mosca's Affidavit and accompanying documentation, Ms. Brady engaged in highly disruptive conduct in the workplace which violated the employee's privacy and contravened state law barring genetic testing absent express consent."

175 F.3d 14, 16 (1st Cir. 1999); Restatement (Second) of Torts, § 587 (1977). "Judicial proceedings include all proceedings in which an officer or tribunal exercises judicial functions . . . ." Restatement (Second) of Torts, § 587, comment f. The absolute privilege afforded to statements made in judicial proceedings has been applied to protect filings made in proceedings before other tribunals, including states' Departments of Labor. See Caroll v. ABM Janitorial Services-MID Atlantic, Inc., 970 F. Supp.2d 292, 299-300 (D. Del. 2013); Burnett v. Trinity Institution Homer Perkins Ctr., Inc., 2011 WL 281023, at *5 (N.D.N.Y. Jan. 25, 2011); Marshall v. FedEx Ground Pkg. Sys., Inc., 2010 WL 3529307, at *8 (M.D. Pa. July 13, 2010); Lowe v. Capital One, Nat'l Ass'n, 2009 WL 3149598, at *2-*3 (W.D. La. Sept. 25, 2009).

The Department of Labor proceeding at issue here had sufficient similarity to a judicial proceeding to make the absolute privilege available. Brady does not contest the judicial nature of the proceeding. Because Kincaid's statement cited by Brady was part of a motion filed in the Department of Labor proceeding, it is privileged and cannot serve as a basis for Brady's defamation claim.

<u>Conclusion</u>

For the foregoing reasons, Jeanne Kincaid's motion to dismiss (document no. 11) is granted.  All claims against her are dismissed.

SO ORDERED.


_____
Joseph DiClerico, Jr.
United States District Judge

June 13, 2016

cc:  Demetrio F. Aspiras, III, Esq.
     Lisa Marie Brady, Esq.
     Brian J.S. Cullen, Esq.
     Melissa A. Hewey, Esq.

13